Thank you, your honors. My name is Paula Olson. I'm from Tacoma, Washington, and I represent the Appellant's State's Appeal. You might be reserved one minute for rebuttal, please. Your honors, there's three issues in this appeal. The first issue is whether there's sufficient evidence to support the conviction of a conspiracy. The second is whether there's sufficient evidence to support the substantive offense of the use of a firearm in furtherance of a crime of violence. Or the Section 924C offense. The third issue is whether there was sufficient evidence before the trial court to conduct an inquiry as to whether or not Stacey Comer was incompetent to stand trial. That third issue, your honor, I would like to submit on the briefs. And unless the court has any questions, I will not discuss it further in my oral comments. The standard of review for the first two issues is a de novo standard. The court looks at the record in the light most favorable to the government to prove beyond a reasonable doubt each and every element of the offenses. Going to the first issue regarding conspiracy, it's helpful to review those elements. The first is that there was an agreement to carry out an illegal purpose. The second is that there was one or more overt acts to carry out this agreement. And the third is the intent to commit the substantive offense. The substantive offense as a subject of this appeal is the Section 924C offense. Now when we look at what occurred in this case, the court should keep in mind that the events took place in less than 24 hours. And the evidence of a conspiracy took place in less than 12 hours, which must be one of the shortest conspiracies, I would argue, on record. However, it is my understanding that the defendant only disputes the existence of the agreement. The defendant disputes the existence of the agreement. That's correct, your honor. And you suggest that I'm to review this in a light most favorable to the prosecution. When I look at these, having to make these determinations, I always think, does the jury have sufficient evidence in order to convict? Now if I look at that, and I look at these facts, tell me how I can suggest the jury did not have substantial evidence. Comer instructed Alvarado to bring Wylde to Comer's house. Comer had discussions with both Traver and Alvarado that Wylde was a snitch. Comer told Traver that Traver should punish Wylde for being a snitch. And Comer and Traver assaulted Wylde while Alvarado held a gun to his head. Now tell me how I cannot suggest there's sufficient evidence for an agreement. Because, your honor, there is no evidence of an agreement. Well, if somebody suggests that, bring this guy to my house, the guy's a snitch, you should punish this guy, and then they hold him while there's a gun to his head, somebody doesn't have to say, I want to make an agreement with you, do I? You look at the facts underneath, and then the jury has to determine if there's sufficient evidence. We're overturning a jury now that had the correct instructions. You've not appealed the instructions, and we're saying there's no evidence, no substantial evidence in favor of the verdict. And I think what the court, with all due respect, what the court is, how the court has characterized the facts, is as the government characterized the facts. Well, that's what I'm supposed to do, lie most favorable to the prosecution. I understand that, your honor, but the court has to go back to the record, has to go back to the transcript, and look and see what was actually testified to. What Mr. Martinez testified that he, as part of the discussion, appears on our excerpts of the record, page 36. Question, what did Stacey ask you to do at the end of your conversation? Answer, he just told me if I bumped into him to bring him by the house so he could talk to him. For the government to characterize that as an instruction to bring Mr. Wilde to Stacey Comer's house so that he could assault him for being a snitch is really quite a stretch, because there is no other evidence to prove that that's what the intention was. Well, except that's what he did. That's what he did to Wilde. He went to Wilde and brought him back to the house. And we would say that was strictly a coincidence. When Mr. Wilde showed up at the house, everybody in the house was surprised. Well, Alvarado certainly wasn't. He was bringing him. Pardon me? Alvarado wasn't surprised. He was bringing him at gunpoint and appears he was bringing him because he thought that was the instruction of your client. That's correct. He did bring him. Well, you've tried to characterize the lack of agreement based upon Mr. Alvarado's testimony, and yet Alvarado responds to it by actually doing what Comer tells him to do. It makes it a little tough to take the characterization you're trying to offer of what the discussion was, because Alvarado actually did what he's accused to have done. But, Your Honor, the evidence in the record indicates that these were independent actions. They weren't actions as a result of an agreement amongst the parties. Well, see, your client tells Alvarado, when you see him, bring him back here. The same day, Alvarado brings him back here. And those are entirely independent actions? In the context of what the ñ and Mr. ñ and the Court has to remember, too, that Mr. Martinez testified there was no agreement. He testified there was no agreement. He testified that Mr. Comer's statement was only a comment, that he never made an agreement with anybody to do anything. That is a quote out of the presentation. Sure. But he did exactly what he was told to do. Now, how is that not an agreement? Because he did it just independently. He did it on his own initiative and on his own timeframe. It was not in the context of an agreement between the three of them or certainly between he and Mr. Comer. Well, I guess that's why I went to substantial evidence. I mean, I got to read all this evidence in favor of the prosecution, all reasonable inferences in their favor, and now I'm talking about any substantial evidence to justify the jury's verdict. Now, you can argue another side, and I may even be on your side with the argument. But my question is, can I find no evidence to support it? The Court is looking for evidence beyond a reasonable doubt. I understand that. And I would submit to the Court that there is plenty of reasonable doubt here, certainly plenty of reasonable doubt as to whether there's an agreement. And then we go on to the second issue as to whether there was any intent on Mr. Comer's part that Mr. Wilde be brought to him at gunpoint. And this brings up the whole issue about the use of guns. Now, the government is relying, as their evidence, they are relying solely on the idea that and the fact that Mr. Comer knew both Mr. Traber and Mr. Martinez carried guns. He knew this. Everybody knew this. But it's also stated in the record that Mr. Comer says people didn't like to hang out with these guys because of the guns. And Mr. Comer takes it one step further. The guns are not allowed in his house. He doesn't own them. He doesn't use them. And the other one. Did your client tell Mr. Martinez, get out of the house? You're not allowed in the house with a gun? Your Honor, that aspect of this case took place in a matter of seconds. Mr. Martinez shows up with Mr. Wilde, pushes him down the stairs. There's testimony that nobody saw. The hostility of your client at that point was not directed toward Mr. Martinez, was it? It was directed toward the snitch. The use of the firearm? No, the snitch was beaten up. Snitch was beaten up. Mr. Comer's testimony that he doesn't allow firearms in the house rings a little hollow when Mr. Wilde is brought back at gunpoint and it isn't Mr. Martinez that's told to get lost with that gun. It's Mr. Wilde that gets beaten up. But I think the court has to take into consideration the physical layout of the house. When Mr. Martinez brought Mr. Wilde to Stacey Comer's house, his apartment was in the basement and there was a set of stairs. So the only use of the gun, as far as the testimony is, was to bring him to the house, and then Mr. Wilde was pushed down the stairs. There is no evidence that Mr. Comer saw Mr. Martinez with the gun. Didn't two out of three witnesses testify that the gun was visible? There's clearly two. Well, right, but the standard is whether rational to our fact to look at all the evidence and reach the conclusion that they did. And there were two witnesses who said the gun was visible during the entire incident. And, Your Honor, we'd have to go back and look into the transcript to see whether that visibility was people looking up the stairs, seeing Mr. Martinez up the stairs with the gun. There was no evidence that the gun was used during the assault or was part of the assault, or that Mr. Comer. And, again, this gets back to the intent, Mr. Comer's intent and understanding and knowledge that a gun would be used during this. Just the question, the standard there again is just reasonable foreseeability, not intent. That's correct, Your Honor, and there was no evidence that it was reasonably foreseeable or necessary in a natural consequence of this conspiracy to use a gun. There's no evidence of that. All right. Now, excuse me. Oh, go ahead. Go ahead. In Alvarez-Falenzuela, we suggested there was sufficient evidence to support the firearms charge because there was a high value and violent nature of a drug trade. And because the position of the firearm in the waistband was visible, that that was enough. Now, here I have Comer knowledge that Alvarado uses a gun. He has knowledge that he carries a gun all the time. And then I have the evidence that my colleagues have sufficiently put forward, and I compare that to the now. Does the jury have sufficient evidence, given the prosecution's every intentment of the fact? Now, how do I distinguish Alvarez-Falenzuela? Quite easily, Your Honor. Actually, first of all, this is not a case involving drug trade. This is a one-time incident of assaulting a man because he is a cooperating witness. The use of a firearm is absolutely not necessary to carry out such an assault. The gun, Mr. Martinez did not carry his gun around, at least during the period of time, the period of time that this offense took place. The transcripts indicated that he kept it under a garbage can at his residence. He did not carry it around. He did not have it on him during the afternoon when this whole discussion took place about Mr. Wilde. Mr. Comer did not. He had a general knowledge. Everybody had a general knowledge. And if that is true. And that's all that was happening in Alvarez-Falenzuela was a general knowledge that this person had a firearm in his waistband, a general knowledge that they could see. That's the key, Your Honor, that they can see. There was no evidence of sight. There was no evidence of possession. And that goes directly to the intent. There's no evidence that Mr. Comer intended that the gun be used. Thank you. Thank you, counsel. Good morning. May it please the Court. My name is Roger Rogoff. I represent the United States. I'm an assistant United States attorney here in Seattle. There are three issues that were raised. Two were discussed with Your Honors. I will focus initially on the question of sufficiency of the conspiracy and then move on to the question of sufficiency of the 924C decision. There's a lot of discussion in the case law that counsel cites as well as the government cites in this case about the fact that there does need to be an express agreement. There does not need to be a give and take and some consideration like you would have in a business meeting. For a criminal conspiracy, you simply need circumstances and facts that lead a reasonable jury to believe that there was an agreement. And in this case, you have that. Beyond that, though, you have about as close to an express agreement as you're ever going to have in a criminal conspiracy in this case. And that started a day or so before this incident when Brandon Traver sat down with the defendant, Stacy Comer, and Stacy Comer said, Curtis Wild snitched, and if you see him, you should punish him for that. Brandon Traver's response was, I will. And as he told the jury and as he told counsel, his response was, I said I would. Beyond that, with Alvarado Martinez, the defendant tells him, and if you read carefully on page 45 of the supplemental excerpt of records, line 4, the first thing that Alvarado Martinez says is not that Stacy Comer said he would punish him, but the quote is, if you bump into him, we would like to talk to him. Evidence of a conspiracy and evidence that Stacy Comer knew there was a conspiracy before any type of assault occurred. Unless the court has questions about that particular issue, I'll move on to the gun issue. Again, the question is reasonable foreseeability. One of the problems that the defense has in this case is that they tend to cite that law and then argue whether or not the gun was foreseen. The question was reasonable foreseeability, and in this case, the gun was something that Alvarado Martinez carried all the time, according to the supplemental excerpt of records, page 253. That doesn't mean he just carried it once in a while, but carried it all the time. When he entered that house, Stacy Comer knew he had a gun, and certainly when he landed on that landing on the stairway down to the basement, he knew he had a gun. And that gun was reasonably foreseeable. If the court has any further questions, otherwise I'll sit down. Thank you. Thank you, counsel. U.S. v. Comer will be submitted. We'll take up Moore v. King County Fire Protection District, number 26. Thank you.
judges: Wardlaw, Clifton, Smith